Dear Senator Short:
You have requested an opinion from this office concerning the validity of a lease between the Parish of St. Tammany (Parish) and the St. Tammany Parish Fair Association (Association). The issue of the validity of the lease has been questioned by Investment Management Services, Inc. (IMS), which has a Professional Management Services/Operational Agreement (Agreement) with the Parish for the management and operation by IMS of the land and facilities owned by the Parish located within the City of Covington known as the "fairgrounds".
One of the responsibilities of IMS under the Agreement is to enforce the provisions of the lease between the Parish and the Association. In connection with this request, we have been furnished a copy of both the lease between the Parish and the Association; and the Agreement between the Parish and IMS.
It appears that IMS questions whether "special procedures" were followed in leasing the fairgrounds to the Association. We assume that IMS is questioning whether there was advertisement and competitive bidding as required by the Public Lease Law, La. R.S.41:1211, et seq. Without an express permissive provision in a special law allowing a negotiated lease, the provisions of the Public Lease Law would be applicable to the leasing of the St. Tammany Fairgrounds and Arena. See: Hall vs. Rosteet,169 So.2d 903 (La. 1964).
While a conclusive determination as to whether there was advertisement and competitive bidding for this particular lease is not possible based on a simple review of the lease between the Parish and the Association, it would appear that these requirements were not followed. There is no reference in the lease to any resolution of the Police Jury accepting a bid submitted by the Association, and authorizing its President to enter into a lease with the Association; and there is no monetary consideration paid by the Association for this particular lease. Even though there may have been advertisement and public bidding in this case, the lack of any monetary consideration paid by the Association to the Parish would require a further determination as to whether the other obligations imposed in the lease on the Association constitutes serious consideration for the lease. See:Arnold vs. Board of Levee Commissioners, 366 So.2d 1321 (La. 1978). Without additional facts, we are unable to evaluate whether the other obligations imposed upon the Association would constitute serious consideration for this particular lease.
However, while we are unable to give an opinion as to whether this lease was advertised for competitive bidding or whether the obligations imposed on the Association in the lease would constitute serious consideration, we are of the opinion that this contract may be considered a cooperative endeavor agreement, which is constitutionally sanctioned by Louisiana Constitution Article 7, § 14(C). The Parish may allow the Association the use of its property for a period of three weeks per year in consideration of the Association sponsoring the St. Tammany Parish Fair for the public purpose of promoting livestock and agricultural activities typically associated with parish fairs and festivals.
Finally, our review of the Agreement between the Parish and IMS raises concerns as to whether this Agreement is a valid management/operational contract. It appears that the Parish has completely turned over to IMS the land and facilities comprising the "fairgrounds". The Parish did not contract with IMS on a monthly or annual management fee basis or even on a percentage basis of the rentals received from the users of the facilities. In fact, the Parish has agreed to compensate IMS for the loss of revenues which IMS may have generated during the periods when the Association and the Louisiana Cooperative Extension Service are contractually entitled to use the facilities. Furthermore, IMS is authorized to receive all payments made by four other entities which have existing contracts to use these facilities; and the Parish agreed to pay the utilities cost for these events if the cost of utilities exceeds the total payments received by IMS. It is also noted that while not receiving any of the rental income that may be generated by the use of this facility, the Parish has agreed to be responsible for all major repairs to the facility.
It is the opinion of this office that the Agreement between the Parish and IMS may be tantamount to a loan of this public property to IMS for the purpose of conducting a commercial enterprise. Such an arrangement would be prohibited by Louisiana Constitution Article 7, § 14 (A).
If you have any further questions concerning this request or if it does not adequately address the matters that you have raised, please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ ROBERT H. CARPENTER, JR. Assistant Attorney General
RPI/RHC/tp